# EXHIBIT 7

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
    FLEXTRONICS INTERNATIONAL        )
 4  USA, INC.,                       )
                                     )
 5  Plaintiff/Counter-Defendant.     )
                                     )
 6  -vs-                             )  Case No. 15 C 4904
                                     )
 7  SDS-IC, LTD.; SDS-IC-HK,         )
    LTD.; and AARON SERGE BUENO,     )
 8  also known as SERGE JOSEPH       )
    BUENO,                           )
 9                                   )  Chicago, Illinois
    Defendants/Counter-              )  July 21, 2016
10  Plaintiffs                       )  9:50 a.m.

11                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE GARY FEINERMAN
12

13  APPEARANCES:

14  For the                 BENESCH FRIEDLANDER COPLAN & ARONOFF,
    Plaintiff/Counter-      LLP (Chicago)
15  Defendant:              BY:  MR. ANDREW J. JARZYNA
                            30 South Wacker Drive
16                          Suite 2200
                            Chicago, Illinois  60606
17                          (312) 466-7557

18  For the                 MAURICE WUTSCHER, LLP
    Defendants/Counter-     BY:  MR. F. JOHN McGINNIS
19  Plaintiffs:             105 West Madison Street
                            Suite 1800
20                          Chicago, Illinois  60602
                            (312) 223-1111
21
    Court Reporter:
22
                  CHARLES R. ZANDI, CSR, RPR, FCRR
23                    Official Court Reporter
                    United States District Court
24            219 South Dearborn Street, Room 2128
                     Chicago, Illinois  60604
25                Telephone:  (312) 435-5387
              email:  Charles_zandi@ilnd.uscourts.gov
```

1 | APPEARANCES: (Continued)

2 | For non-party Tomas   MORGAN LEWIS & BOCKIUS, LLP
    Schwab:              BY:  MR. TINOS DIAMANTATOS
3 |                      77 West Wacker Drive
                         5th Floor
4 |                      Chicago, Illinois  60601
                         (312) 324-1000

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

(Proceedings heard in open court:)

THE CLERK: 15 C 4904, Flextronics versus SDS-IC.

MR. JARZYNA: Good morning, your Honor. Andy Jarzyna on behalf of Flextronics.

MR. McGINNIS: Good morning, your Honor. John McGinnis on behalf of the SDS defendants.

THE COURT: Good morning. So, I have the SDS defendants' motion for an extension of time to provide the Schwab affidavit. And was Schwab's separate counsel going to be here as well?

MR. McGINNIS: Yes, Mr. Diamantatos is here.

THE COURT: Okay. So, where -- do you want to make your appearance?

MR. DIAMANTATOS: Good morning, Judge. Tinos Diamantatos. I represent Mr. Schwab individually, who of course is not a party to the lawsuit, Judge. I don't have an appearance on file, but I wanted to make myself available to the Court to answer any questions your Honor has.

THE COURT: Understood. So, my question is: Where do things stand?

MR. McGINNIS: Your Honor, where things stand is Mr. Schwab has resigned as a director and officer of the SDS defendants. He has not provided us with an affidavit, so we cannot file an affidavit because we've not been provided with one.

1       MR. DIAMANTATOS:  I'm happy to speak to that point,
2 Judge.
3       THE COURT:   Sure.
4       MR. DIAMANTATOS:  Your Honor, I was retained on this
5 past Friday to represent Mr. Schwab on this specific issue
6 stemming from your Honor's July 8th order.  We took great
7 effort throughout the weekend to communicate with Mr. Schwab,
8 to bring ourselves up to speed on the voluminous factual
9 record.  There's a bit of a tortured past in this case,
10 frankly.
11       With regard to the declaration, to be abundantly
12 clear, my role was to describe to Mr. Schwab the various
13 options available to him, whether he should submit an
14 affidavit to defense counsel, who the order was directed
15 toward, or whether he should assert a Fifth Amendment
16 privilege.
17       Where things stand based on information that we
18 learned up until yesterday from Mr. McGinnis, it appears that
19 the company is taking a position that is adverse to
20 Mr. Schwab.  Mr. Schwab, after being advised by me on the
21 various options available to him, has made himself available
22 to cooperate with the defendants to the extent they want to
23 submit a declaration from Mr. Schwab on this issue to the
24 Court.
25       And to be clear, Judge, and I know you're very

1 familiar with the factual history in this case, the two main
2 documents that are at issue and subject to the motion to
3 compel are a declaration from Mr. Schwab that was in the past
4 drafted through assistance of counsel, Mr. McGinnis; and of
5 course, there was plaintiff input in that declaration to the
6 extent that it was arrived at by virtue of a stipulation.
7 Subsequently, there was a deposition, of course,
8 where Mr. Schwab was presented by counsel for the company.
9 That deposition was given under oath. The subject matter was,
10 of course, the declaration, and the very pointed questions
11 that your Honor has now asked Mr. Schwab.
12 He is in a position to be able to assist the company
13 if they would assist him with drafting the appropriate
14 declaration to the Court making representations.
15 I've spoken to counsel for the company. The company
16 is taking the position that they don't want a declaration from
17 Mr. Schwab, that in the event they were to obtain one from
18 Mr. Schwab, they would not file it with the court. And of
19 course, if they were obligated to file it by any type of order
20 from your Honor, that they would refuse to stand -- make any
21 representation one way or the other as far as the veracity of
22 the claims made in the declaration or not.
23 In light of that, Mr. Schwab finds himself in a
24 situation where he's now off on an island, frankly. The
25 company does not want a declaration from him and, in fact,

1    would not submit it or assist him in the drafting of that
2    declaration to make things clear to the Court.
3         So, in light of that, he's refusing to make any
4    further statements on the issue because it appears to
5    Mr. Schwab now that the stack is frankly -- the deck is
6    stacked against him, particularly in light of the change in
7    counsel's view of Mr. Schwab and the company.
8         THE COURT:  I'm confused.  The defendants are saying
9    that Schwab resigned as a director and officer of SDS,
10   understood; that he has not provided an affidavit, understood;
11   and so SDS can't file an affidavit.
12        What I was inferring from that is that Schwab decided
13   that he wasn't going to submit an affidavit; and, therefore,
14   defendants can't submit an affidavit.  And of course, if an
15   individual isn't willing to sign an affidavit, the party can't
16   submit the affidavit because there's nothing to submit.
17        What Mr. Schwab's counsel is saying is that the
18   reason that Schwab has not provided an affidavit is because
19   the defendants don't want an affidavit from him, and if they
20   were given an affidavit, they wouldn't file it.  Is that true?
21        MR. McGINNIS:  That's -- no, your Honor, that's not
22   quite true.  The defendants' position is as a company, they
23   cannot verify that Mr. Schwab sent the November 24th e-mail.
24   If Mr. Schwab submits an affidavit saying that he sent the
25   November 24th e-mail, the company cannot vouch for that

1  affidavit. If your Honor -- and that's what we've told
2  counsel. The company would not vouch for his affidavit.
3  Given the fact that the company's unwilling to vouch
4  for his affidavit, he's unwilling to submit an affidavit.
5  MR. DIAMANTATOS: If I may speak to that, Judge,
6  briefly. This issue of vouching, frankly, Judge, confuses me,
7  because counsel has assisted Mr. Schwab as a witness in this
8  case, as CEO of this company that's a defendant in the case,
9  in the preparation of representations to the Court, by way of
10 his prior declaration, by way of his deposition testimony.
11 And to now take the position that any type of assertions made
12 by Mr. Schwab, we can't vouch for, that's problematic for a
13 number of reasons.
14 The Court has directed the defendants to submit a
15 declaration by Mr. Schwab that squarely answers three
16 questions. If Mr. Schwab is in a position, after being
17 advised of his Fifth Amendment rights, to not answer those
18 questions, he, of course, can assert that.
19 In my conversations with counsel, he has said, "We
20 will not file a declaration for Mr. Schwab. We can't stand
21 behind anything that he puts in a declaration." That's a
22 stark difference than the position they've taken in the past
23 about the very same subject matter.
24 THE COURT: But that's two different things. Not
25 vouching for and not filing are two different things. I can

1  imagine a circumstance where the defendants would say, "Here's
2  a declaration from Mr. Schwab.  As corporate entities, we
3  don't know whether Schwab is telling the truth or not; but you
4  asked for the declaration, and here it is."
5        MR. McGINNIS:  And we'd be -- we'd be willing to
6  comply with your Honor's order to file the declaration based
7  upon your Honor ordering us to file it, but we would not stand
8  behind it.
9        THE COURT:  Okay.  So, why -- would Schwab -- let's
10 say that things proceed as the way I just said it.  Is that
11 okay with Schwab?
12       MR. DIAMANTATOS:  Mr. Schwab would refuse to make any
13 further statements to the company if that's the position
14 they're now taking with regard to representations he would
15 make in an affidavit.  In that instance, he would refuse to
16 make any further statements for fear that further
17 communications might create a problem for him.
18       THE COURT:  Well, he doesn't have to do further
19 communications.  All he has to do is write a very simple
20 declaration saying, "I did it," or, "I didn't do it," and he's
21 speaking for himself.
22       MR. DIAMANTATOS:  I know.  I understand.
23       THE COURT:  And the defendants -- why does he need
24 the defendants' imprimatur for his factual statements in order
25 to make his factual statements?

1         MR. DIAMANTATOS: Well, Judge -- and I completely
2 understand your Honor's question. The issue isn't whether
3 Mr. Schwab would continue to stand behind his statements or
4 not, and if he is asserting the Fifth Amendment privilege for
5 fear that if he changes his testimony now, that would create a
6 problem.
7         The issue he now faces is that plaintiffs have
8 made -- lobbed an allegation against him, a very serious one
9 that should be taken seriously. The FTI report speaks for
10 itself. Counsel for the company is now taking a position that
11 is adverse to Mr. Schwab.
12         So, for fear of what may come next, he doesn't want
13 to make any further statements; and that's exacerbated by the
14 fact that the company is saying, "We don't want your
15 declaration, or if we were forced to file it, we would make
16 it clear that we're not sure what's contained in it."
17         THE COURT: Well, they're not -- the company is not
18 saying, "We don't want your declaration."
19         MR. DIAMANTATOS: They told me that this morning,
20 Judge.
21         THE COURT: They're saying, "Give me your
22 declaration. We'll file it. But in filing it, we're going to
23 say, 'Look, we don't know whether it's true or false.'"
24         MR. DIAMANTATOS: That's a bit different, your
25 Honor --

1         THE COURT: And that would be no different than if
2 he were subpoenaed for a deposition, I imagine plaintiff's
3 counsel would ask him the same exact questions that I set
4 forth in my order, and he couldn't refuse -- well, he could
5 plead the Fifth; but if he didn't plead the Fifth, he couldn't
6 say, "Well, I'm not going to answer these questions in the
7 deposition because I don't know if the SDS entities are going
8 to agree with me." Is that correct, if he were in a
9 deposition?
10         MR. DIAMANTATOS: That's right, Judge.
11         THE COURT: Okay. So, if he couldn't refuse to
12 answer, putting aside a Fifth Amendment, putting aside him
13 taking 5 in a deposition, why could he refuse to answer in
14 the context of a declaration?
15         MR. DIAMANTATOS: Well, here's the issue, Judge. The
16 order that your Honor has entered is directed toward the
17 company. The company has been directed to take some action
18 with the Court. That action would require Mr. Schwab's
19 cooperation with the company.
20         THE COURT: No, it wouldn't. And I hate to interrupt
21 you, but I want to make sure that we're agreed on a set of
22 premises.
23         MR. DIAMANTATOS: Sure.
24         THE COURT: He doesn't have to cooperate with the
25 company to draft a declaration. It's a real simple thing.

1    "I did it." "I didn't do it." He knows. He doesn't need a
2    forensic computer expert to tell him whether he concocted an
3    e-mail or not. That's not something you forget.
4    　　　　　Now, if he denies it, then we need the forensics
5    because then the forensics will help figure out whether he
6    did it or not. But he himself knows whether he did it or not.
7    So, he doesn't need the company's help to say, "Okay. So, for
8    these three things, I either did or didn't do No. 1, did or
9    didn't do No. 2, did or didn't do No. 3." It could be a
10   one-pager, and -- or a two-pager, if it's complicated.
11   　　　　　MR. DIAMANTATOS: Judge --
12   　　　　　THE COURT: And all he needs to do is draft that
13   declaration, give it to the defendants. The defendants will
14   file it and say, "Judge, you asked for this declaration.
15   We're giving it to you; but in giving it to you, we're not
16   saying that we agree with any of the factual averments
17   therein." What's wrong with that?
18   　　　　　MR. DIAMANTATOS: Here 's the issue, Judge, with
19   that. What your Honor has described is -- I agree with you,
20   Judge. It would be simple. It would be short. When I say
21   the cooperation of the defendants, my point here is that
22   Mr. Schwab has made representations in a declaration in the
23   past under oath, in a deposition that he was prepped and
24   prepared for by counsel under oath. He's now being asked
25   questions about that very subject matter. He can answer those

1  questions.

2  Mr. Schwab has prepared an answer to your Honor's
3  questions himself. I did not assist him in the drafting of
4  it. Mr. Schwab is generally aware of what should go in a
5  declaration. He understands fully that it must be the
6  110 percent truth.

7  But in preparing that declaration and asking counsel
8  if they want the declaration, if it would be filed by the
9  company as they've filed other documents in the past for
10 Mr. Schwab as a witness in the case, the company has indicated
11 that they would not file it. They would question whether
12 those statements in there are true or not.

13 So here's where the Fifth Amendment issue comes in.
14 Even if a witness is adamant that a statement he is about to
15 make is the absolute truth and it wouldn't incriminate him or
16 her to make a truthful statement, the issue in this case is
17 that Mr. Schwab may -- others may disagree with him. Clearly
18 the plaintiff disagrees. Now perhaps the company disagrees.
19 Your Honor, of course, could make a ruling that would be
20 adverse in this case.

21 So, in light of that additional factual circumstance,
22 Mr. Schwab is going to decline to make any further statements
23 and exercise his Fifth Amendment right, given now the change
24 in the company's position where they're now saying, too,
25 "We're not standing behind this."

So, to the extent that Mr. Schwab -- and it's his decision -- elects to submit a further declaration and the company is washing their hands of it and some adverse decision comes later on as a result, Mr. Schwab refuses to make any further statements on this issue.

And I hope I'm clear on that, Judge. I'm not trying to split hairs.

THE COURT: I think you just cleared it up. So he is invoking his Fifth Amendment right, under the current circumstances, not to submit a declaration?

MR. DIAMANTATOS: Under the current circumstances, Judge, yes, that's exactly right. And thanks for allowing me the opportunity to clarify that. It's a complicated, tortured past in this case, Judge. I spent, along with my colleagues at the firm, a good amount of time going through the record trying to determine exactly what happened here and how we got to this circumstance.

It's unfortunate, I think, for a number of reasons, but that's neither here nor there for my purposes. My goal was to fully apprise Mr. Schwab of what his options are, both with regard to the Fifth Amendment and with regard to answering very simply, straightforward, in a 110 percent honest way answers to your questions, Judge, to do that in connection with the company.

Because right now, as you know, Judge, Mr. Schwab

isn't under order to do anything.  It's his company as CEO -- or the former CEO that was directed to comply with your Honor's order.  And in trying to work with the company to further those efforts, the company has made their position clear, so in light of that, Mr. Schwab's declaration that he prepared himself to tender to them now becomes problematic for him, where he sees that the lay of the land as it stands in the case right now, given the present circumstances, it may make sense for him to not provide any further statements on this issue for fear that it may create problems for him down the line.

That's as best as I could describe it.  That was my role in the case, to advise Mr. Schwab on that, and that's where we stand.

THE COURT:  All right.  So, we're not going to get a declaration from Mr. Schwab; and, therefore, I can't require the defendants to provide a declaration that Mr. Schwab is not willing to provide.  At least that's what I'm thinking.  Plaintiff, do you agree?

MR. JARZYNA:  I do agree.  I'm concerned about what's going to happen now in terms of obtaining a deposition of Mr. Schwab because now he's no longer employed by the company, and I'm just wondering how we're going to -- and it's very difficult to obtain a subpoena of someone in France.  And now, obviously, we're not going to have it happen through a party

1 to this case. So, I guess we'll address that when it comes to
2 it, but I'm not sure how -- where things are going to go
3 forward in that respect.
4     THE COURT: Okay. So, why don't we then -- we do
5 have a briefing schedule in place, and it will just have to go
6 forward without Mr. Schwab's declaration.
7     Now, maybe the SDS entities, by saying that they're
8 not going to stand behind Schwab's denial, will on August 8th
9 just admit what happened and won't need forensic examiners to
10 support a denial. You may need to think about that.
11     MR. McGINNIS: Your Honor, we will continue to
12 investigate. Our current position is we cannot support
13 Mr. Schwab's position, but we know of no evidence to say he's
14 incorrect.
15     THE COURT: Okay. Then we'll see what comes in on
16 the 8th, and then there's going to be a reply on the 29th.
17 Just because I don't know what's going to come in on the 8th,
18 let's set this for a status hearing, assuming that you are all
19 going to be in town, during the week of August 15th. I guess
20 it would have to be towards the beginning of the week, Jackie.
21     THE CLERK: We'll set you for August 15th, 9:00 a.m.
22     THE COURT: Are you both available?
23     MR. JARZYNA: Yes, your Honor.
24     MR. McGINNIS: Let me just look here, your Honor.
25     THE CLERK: What about the motion for extension of

1 time?

2 MR. McGINNIS: 15th? Yes.

3 THE COURT: Okay. Good. And as to the motion for an
4 extension of time, I'm going to deny it as moot because
5 there's nothing that's going to get filed.

6 MR. JARZYNA: Thank you, your Honor.

7 THE COURT: Anything else?

8 MR. JARZYNA: No.

9 MR. McGINNIS: Thank you.

10 MR. DIAMANTATOS: Judge, do you need me here on the
11 15th, or is my role complete?

12 THE COURT: I think you're done, but I appreciate
13 your being here.

14 MR. DIAMANTATOS: Thank you, your Honor. Thanks for
15 the additional time to iron this out.

16 THE COURT: Sure.

17 (Which were all the proceedings heard.)

18 CERTIFICATE

19 I certify that the foregoing is a correct transcript from
20 the record of proceedings in the above-entitled matter.

21

22 */s/Charles R. Zandi*          *August 1, 2016*

23 Charles R. Zandi          Date
Official Court Reporter

24

25